UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| ANTOINE GOODMAN, | Case No. 19-CV-1710 (PJS/BRT) |
| Plaintiff, | |
| v. | ORDER |
| DAKOTA COUNTY; CORRECTIONAL OFFICER SIMPSON, in his individual and official capacities; and SGT. PETERSON, in his individual and official capacities, | |
| Defendants. | |

Zorislav R. Leyderman for plaintiff.

Helen R. Brosnahan, DAKOTA COUNTY ATTORNEY'S OFFICE, for defendants.

Plaintiff Antoine Goodman brings constitutional and state-law claims against defendants Dakota County and two Dakota County correctional officers arising out of a death threat allegedly made to him by one of the officers. Defendants move to dismiss. For the reasons that follow, defendants' motion is granted.

I. BACKGROUND

Goodman alleges the following in his amended complaint: In August 2017, Goodman was detained at the Dakota County Jail. Am. Compl. ¶ 7. On the morning of August 15, 2017, Goodman was leaving his unit to attend class. Am. Compl. ¶ 8.

Because he had forgotten to sign up for the class, Goodman asked defendant Officer Simpson to add his name to the roster. Am. Compl. ¶ 8. Simpson responded, "Don't let it happen again or you will be shot repeatedly until I kill you." Am. Compl. ¶ 8.

Fearing for his life, Goodman immediately filed a grievance about Simpson's threat. Am. Compl. ¶¶ 8-9. A couple of days later, Goodman spoke to defendant Sergeant Peterson about his grievance. Am. Compl. ¶ 10. Goodman told Peterson that he feared for his life and was uncomfortable around Simpson. Am. Compl. ¶ 10. Goodman requested protection from Simpson and asked that he not have any further contact with Simpson due to the emotional trauma such contact would cause. Am. Compl. ¶ 10. Peterson told Goodman that Simpson would still be working at the jail, but that Peterson would speak to the administration about the incident. Am. Compl. ¶ 10.

That afternoon, as Goodman was returning from class, he saw Simpson pat-searching inmates. Am. Compl. ¶ 11. Goodman feared for his life and asked Simpson if a different officer could conduct his pat-search; Simpson told Goodman that no other officers were available and ordered him to submit to a search. Am. Compl. ¶ 11. Throughout the search, Goodman feared for his life and suffered severe emotional and psychological trauma. Am. Compl. ¶ 11. Goodman began having nightmares about being killed and sought help from the health-services unit. Am. Compl. ¶ 12.

Goodman also became chronically stressed, paranoid, afraid for his life, and suicidal. Am. Compl. ¶ 12. Goodman requested records pertaining to Simpson's threat and its aftermath, but Dakota County refused his requests. Am. Compl. ¶¶ 14-15.

Goodman now brings claims under 42 U.S.C. § 1983 and state law based on Simpson's threat, Peterson's failure to protect him from Simpson, and Dakota County's failure to turn over his records.

## II. ANALYSIS

### A. Standard of Review

In reviewing a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Aten v. Scottsdale Ins. Co.*, 511 F.3d 818, 820 (8th Cir. 2008). Although the factual allegations need not be detailed, they must be sufficient to "raise a right to relief above the speculative level . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must "state a claim to relief that is plausible on its face." *Id.* at 570.

B. Section 1983

1. Individual-Capacity Claims

Peterson and Simpson move to dismiss Goodman's § 1983 claims, arguing that, under Eighth Circuit precedents, a single, isolated verbal threat made by a correctional officer to an inmate does not violate the Constitution.[1]  The Court agrees.

"Generally, mere verbal threats made by a state-actor do not constitute a § 1983 claim."  *Hopson v. Fredericksen*, 961 F.2d 1374, 1378 (8th Cir. 1992).  Goodman contends that a death threat is an exception to this general rule.  It is true that "'a prisoner retains at least the right to be free from the terror of instant and unexpected death at the whim of his . . . custodians.'"  *Irving v. Dormire*, 519 F.3d 441, 448 (8th Cir. 2008) (alteration in original) (quoting *Burton v. Livingston*, 791 F.2d 97, 100 (8th Cir. 1986)).  But *Irving* makes clear that not all death threats are actionable under § 1983.  Instead, to be actionable, a death threat must be "objectively credible."  *Id.* at 449-50.

In *Irving*, the plaintiff (William Irving) sued several correctional officers, including Thomas Brigance, Warren Cressey, Ronetta Hyer, and Leonard Neff.  *Id.* at 444-45.  Irving claimed (among other things) that he "suffered prolonged fear for his life as a result of the defendants' death threats and their conduct that made those threats

---

[1]Goodman asserts Fourth and Fourteenth Amendment claims against Simpson and Fourteenth Amendment claims against Peterson.  The parties' arguments do not turn on any analytical distinction among these claims, so the Court will refer generically to violations of the Constitution.

credible." *Id.* at 447. Although all four of the defendants had made death threats, the Eighth Circuit held that Irving had a viable claim only against Brigance. Brigance's threats were objectively credible, the Eighth Circuit explained, because Brigance had made those threats on many occasions and had made "concrete, affirmative efforts" to make good on those threats. *Id.* at 449. In particular, Brigance had armed another inmate with a razor so that the inmate could attack Irving, and Brigance had repeatedly attempted to bribe other inmates to assault Irving. *Id.* at 445.

With respect to the death threats made by Cressey, Hyer, and Neff, however, the Eighth Circuit found them insufficiently credible to violate the Constitution. This was so despite the fact that both Cressey and Hyer had threatened Irving on multiple occasions and the fact that Hyer and Neff had once enabled another inmate (Prewitt) to attack Irving:

> The alleged death threats made by the other defendants are less objectively credible. Cressey is alleged to have made one death threat in April and later to have been in two groups of guards (first with Brigance and Hyer, then with Brigance and Neff) in which someone made threats against Irving (to "off" and to "get" him) in August. Although such behavior, if it occurred, may properly be the subject of disciplinary measures or other remedies, it did not constitute cruel and unusual punishment. There is no indication from Cressey's conduct at the time of the threats or at any other time that they were credible. These alleged threats should have no place in our prisons, but neither did they violate the Constitution.

> Neff's only alleged verbal threat was made as part of one of the above-mentioned groups, and he also allegedly threatened Irving with a can of mace. Hyer's first alleged threat is virtually identical to Neff's—both were made with Brigance and Cressey. Hyer is also alleged to have made an additional statement in September 2005 that she wanted Irving dead, which she gave as her reason for denying his request for an ink pen. Hyer and Neff were both involved in the Prewitt incident more than nine months earlier. The Prewitt incident might have been sufficient to render their later threats credible had those threats occurred closer in time. We assume that Hyer's additional statement was a threat, but it is insufficiently credible as a matter of law. Accordingly, Neff's and Hyer's death threats, however reprehensible and unjustified, did not rise to the level of being objectively credible.

*Id.* at 450.

In this case, Goodman alleges that Simpson made a single verbal threat. Goodman does not allege that Simpson engaged in threatening conduct of any kind, nor does Goodman allege any other facts that would lend credibility to Simpson's threat. Without question, then, Simpson's threat was objectively less credible than the threats that *Irving* found insufficient as a matter of law. Goodman has therefore failed to state a § 1983 claim against Simpson. If Simpson made the alleged threat, he acted reprehensibly, but he did not deprive Goodman of a constitutional right.

With respect to Goodman's claim against Peterson: Goodman alleges that Peterson's failure to protect him from having further contact with Simpson constituted deliberate indifference to a substantial risk of serious harm. *See Chavero-Linares v. Smith*,

782 F.3d 1038, 1041 (8th Cir. 2015) (to prove an unconstitutional failure to protect from harm, the plaintiff must show that he was incarcerated under conditions posing a substantial risk of serious harm and that the defendant was deliberately indifferent to that risk). Because the harm that Goodman allegedly suffered from being in contact with Simpson is not constitutionally cognizable, Peterson cannot be liable for failing to prevent that harm. *Cf. Hicks v. Norwood*, 640 F.3d 839, 843 (8th Cir. 2011) ("[O]ur holding that Captain Norwood did not use excessive force is fatal to Hicks's claims that the remaining defendants unconstitutionally failed to intervene."). The Court therefore dismisses Goodman's individual-capacity § 1983 claims against Simpson and Peterson.

### 2. Official-Capacity Claims

Goodman sued Simpson and Peterson in their official as well as individual capacities. Because a suit against a public employee in his official capacity is simply a suit against the public employer, Goodman's official-capacity § 1983 claims are against Dakota County. *See Miller v. City of St. Paul*, 823 F.3d 503, 506 (8th Cir. 2016).

A municipality cannot be held vicariously liable under § 1983. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). Instead, Goodman must plausibly plead that Dakota County itself caused a deprivation of his constitutional rights. *Id.* at 692. Because Goodman has failed to plausibly plead a constitutional violation, his § 1983 claims against Dakota County necessarily fail. Moreover, even if Goodman had

successfully pleaded a constitutional violation against Simpson or Peterson in their individual capacities, he failed to plead any basis for holding Dakota County liable for that violation under § 1983.

*C. Remaining Claims*

As noted, Goodman has also made various claims under state law. Because the Court has dismissed all of the claims over which it has original jurisdiction, the Court declines to exercise supplemental jurisdiction over Goodman's state-law claims. 28 U.S.C. § 1367(c)(3); *Barstad v. Murray Cty.*, 420 F.3d 880, 888 (8th Cir. 2005) (courts should ordinarily decline supplemental jurisdiction when all original-jurisdiction claims have been eliminated before trial).

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Defendants' motion to dismiss [ECF No. 13] is GRANTED.

2. Counts 1 and 2 of plaintiff's amended complaint [ECF No. 11] are DISMISSED WITH PREJUDICE AND ON THE MERITS.

3. Pursuant to 28 U.S.C. § 1367(c)(3), the Court declines to exercise supplemental jurisdiction over plaintiff's remaining claims, and those claims are DISMISSED WITHOUT PREJUDICE.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: December 6, 2019　　　　　　　　 s/Patrick J. Schiltz  
　　　　　　　　　　　　　　　　　　　Patrick J. Schiltz  
　　　　　　　　　　　　　　　　　　　United States District Judge